**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

SHAKIE JOHNSON, on behalf of himself
and all others similarly situated,

                Plaintiff,

         -v-                                    3:24-CV-1260 (AJB/ML)

BEST BEV LLC,

                Defendant.
_____

**Hon. Anthony Brindisi, U.S. District Judge:**

## DECISION and ORDER

**I.    INTRODUCTION**

Shakie Johnson ("plaintiff"), an employee of Best Bev LLC ("defendant"), a beverage manufacturer, has filed this putative class action alleging that defendant has violated various provisions of the New York Labor Law ("NYLL").

More specifically, plaintiff claims that defendant abridged his and other New York employees' rights by failing to pay them within one week of when they earn their wages ("Count One"), failing to give them complete wage statements with each paycheck ("Count Two"), and failing to provide wage notices upon hiring ("Count Three"), as required under the NYLL.

Defendant filed a pre-answer motion to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, contending first that the NYLL does not provide a private right of action for Count One, and second that plaintiff failed to plausibly allege a concrete injury-in-fact necessary to establish Article III standing for Counts Two and Three.  In the alternative, defendant requested a stay of this litigation pending the New York Court of Appeals' final

resolution of the split in appellate authority between *Grant v. Global Aircraft Dispatch, Inc.*, 223 A.D. 712 (2d Dep't 2024), and *Vega v. CM & Associates Construction Management, LLC*, 175 A.D.3d 1144 (1st Dept. 2019), on the issue of a private right of action.

After defendant filed its motion, the case was reassigned from Chief U.S. District Judge Brenda K. Sannes to this Court. Subsequently, plaintiff opposed, and defendant served a reply.

Having been fully briefed, defendant's motion to dismiss will be DENIED based on the parties' submissions without oral argument.

## II.     BACKGROUND

The following allegations are drawn from the complaint, Dkt. No. 1 ("Compl."), and are assumed to be true for the purpose of resolving the motion to dismiss, Dkt. No. 6.[1]

Plaintiff lives, works, and is domiciled in New York. Compl. ¶¶ 12–14. Defendant is a company that batches and cans various kinds of beverages, including sodas, alcoholic drinks, and more. *Id.* ¶ 30. Defendant is incorporated in the Virgin Islands, with a principal executive office in St. Thomas, and is registered to do business in New York. *Id.* ¶¶ 2, 16.

Since January 5, 2024, defendant has employed plaintiff as a "[p]rocessing [t]ech" at its Waverly, New York, facility. Compl. ¶¶ 2, 31. More than a quarter of plaintiff's work is manual labor, which includes, among other things, mixing and canning drinks; lifting, packing, and organizing merchandise; and cleaning cans. *Id.* ¶¶ 3–4, 36. During plaintiff's employment, he has earned between $21 and $24 per hour, with higher shift differentials. *Id.* ¶¶ 32–34. He typically works thirty-six- or forty-eight-hour weeks. *Id.* ¶ 35.

---

[1] Where applicable, pagination corresponds to CM/ECF filings.

Throughout plaintiff's employment, defendant has paid him every two weeks. Compl. ¶¶ 4, 37. And defendant has consistently distributed his wages more than one week after the final day of the associated pay period. *See id.* ¶ 42. "For example, for the week beginning on January 7, 2024[,] and ending on January 13, 2024, [d]efendant paid [plaintiff] his lawfully earned wages on January 25, 2024," rather than on January 20, 2024, as plaintiff believes he was entitled. *See id.* ¶¶ 38–39, 42. Defendant's allegedly untimely payments have deprived plaintiff of the time-value of money, including by making it impossible for him to "invest, save, or purchase goods utilizing the wages he earned and was owed but were paid late[.]" *Id.* ¶¶ 40–41.

Defendant has also failed to give plaintiff "proper" wage statements with each paycheck. Compl. ¶ 43. Instead, defendant's wage statements have consistently omitted "the dates of work covered by that payment of wages, [plaintiff's] actual hours worked, his overtime rate, and his overtime wages owed." *Id.* According to plaintiff, these omissions "deprived [plaintiff] of the ability to know exactly how much compensation he was entitled to" for each pay period and, thus, "contributed to the underpayment of wages" he now alleges, *i.e.*, being deprived of the time-value of money. *Id.* ¶¶ 41, 43.

In addition to the defective wage statements, defendant also "failed to provide [plaintiff] with any wage notice" upon hiring. Compl. ¶ 44. According to plaintiff, a proper wage notice would have included, among other things, "[plaintiff's] regular and overtime rates of pay and basis thereof; whether [he] would be paid by the hour, salary, or in another manner; any allowances claimed; the regular payday designated by [d]efendant"; as well as defendant's names, aliases, addresses, and contact information. *Id.* Plaintiff claims that, like the defective wage statements, defendant's failure to provide any wage notice, let alone one containing the information he asserts should have been included, "deprived [him] of the ability to know exactly

how much compensation he was entitled to and against whom to bring his claims, and contributed to the underpayment of wages as asserted herein." *Id.*

During plaintiff's employment, he has seen between 300 and 400 other employees perform manual work at defendant's Waverly facility. Compl. ¶ 45. Plaintiff claims that, like himself, all of those individuals have also received inadequate wage notices and wage statements and untimely paychecks. *Id.* ¶ 46. According to plaintiff, each of these allegedly improper forms and delayed payments violates New York law. *Id.*

Thus, on October 15, 2024, plaintiff filed this putative class action based on diversity of citizenship jurisdiction. *See generally* Compl. On behalf of himself and the other manual workers, plaintiff asserts claims for money damages under NYLL §§ 191 (failure to pay timely wages), 195(3) (failure to furnish accurate wage statements), and 195(a) (failure to furnish accurate wage notices). *Id.* ¶¶ 49–60.

On December 16, 2024, defendant moved to dismiss this action under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, and, in the alternative, sought a stay pending a decision from the New York Court of Appeals in *Grant v. Global Aircraft Dispatch, Inc.*, where the Second Department of the Appellate Division held that the NYLL's frequency-of-payment provisions did not establish a private right of action. 223 A.D.3d 712, 715–20 (2d Dep't 2024); Dkt. No. 6-2 ("Def. Mem.").

### III. LEGAL STANDARDS

#### A. Dismissal Under Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v.*

*United States*, 201 F.3d 110, 113 (2d Cir. 2000). Courts may consider evidence outside the pleadings when evaluating motions under Rule 12(b)(1). *Id.* Plaintiffs asserting subject matter jurisdiction bear the burden of proving such jurisdiction by a preponderance of the evidence. *Id.*

Subject matter jurisdiction is a threshold matter. *See Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 675, 678 (2d Cir. 1990). So, where a party has moved to dismiss on Rule 12(b)(1) and other grounds, a court should evaluate the Rule 12(b)(1) motion first. *Id.*; *Sherman v. Black*, 510 F. Supp. 2d 193, 197 (E.D.N.Y. 2007) ("Because subject matter jurisdiction is a threshold matter, the court must address defendants' Rule 12(b)(1) motion first.").

**B.     Dismissal Under Rule 12(b)(6)**

To survive a Rule 12(b)(6) motion to dismiss, the complaint's factual allegations must elevate the plaintiff's right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While legal conclusions can provide a framework for the complaint, they must be supported by meaningful factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In short, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

To assess the plausibility requirement, the Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In doing so, the Court generally confines itself to allegations in the pleading, any documents attached to the complaint or incorporated to it by reference, and matters of which judicial notice may be taken. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Concord Assocs., L.P. v. Ent. Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016)).

### C. Staying Proceedings

"It is well-settled that a district court has discretionary power to stay proceedings pursuant to its inherent power to control its own docket." *Eddystone Rail Co., LLC v. Jamex Trans. Servs., LLC*, 2019 WL 181308, at *4 (S.D.N.Y. Jan. 11, 2019) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936)).

"A stay is not a matter of right but an exercise of judicial discretion that depends on the circumstances of the particular case." *Miller v. City of Ithaca, N.Y.*, 2019 WL 1470249, *2 (N.D.N.Y. Apr. 3, 2019) (citing *Nken v. Holder*, 556 U.S. 418, 433 (2009)); *accord Hoover v. HSBC Mort. Corp. (USA)*, 2014 WL 12781322, *2 (N.D.N.Y. July 9, 2014) (collecting cases). Accordingly, "[t]he party requesting a stay bears the burden of showing that the circumstances justify such an exercise of that discretion." *Nken*, 556 U.S. at 433–34.

In the Second Circuit, courts considering whether to stay proceedings pending the resolution of related appeals evaluate the following factors, together known as the "*Kappel* test":

> (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.

*Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996) (quoting *Volmar Distribs. v. N.Y. Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993)) (additional citations omitted in original).

IV. **DISCUSSION**

    A. **Rule 12(b)(1) and Plaintiff's Standing to Assert Counts Two and Three**

Pursuant to Rule 12(b)(1), defendant has moved to dismiss Counts Two and Three for lack of subject matter jurisdiction. Def. Mem. at 18. In support of this motion, defendant argues that "[p]laintiff lacks Article III standing to assert claims for alleged technical violations of NYLL § 195(1) and § 195(3)." *Id.*

In opposition, plaintiff responds that he has adequately stated an injury in fact that satisfies Article III's concreteness requirements as articulated by the Supreme Court and the Second Circuit. Pl. Opp. at 19–20.

In *Spokeo, Inc. v. Robins*, the Supreme Court held that the standing necessary to sue in federal court does not arise from a statute's merely "grant[ing] a person a statutory right and purport[ing] to authorize that person to sue to vindicate that right." 578 U.S. 330, 341 (2016). Instead, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* Thus, without more, "alleging a bare procedural violation," such as a credit reporting agency's misstating a consumer's zip code in violation of the Fair Credit Report Act of 1970, as in *Spokeo*, does not give rise to Article III standing. *Id.* at 342.

The Supreme Court reaffirmed *Spokeo* in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021). There, it drew "an important difference . . . between [] a plaintiff's *statutory cause of action* to sue a defendant over the defendant's violation of [a] law," which alone is insufficient to establish standing, and "a plaintiff's *suffering concrete harm* because of the defendant's violation of [the] law," which Article III requires. 594 U.S. at 426–27 (emphases added).

More immediately pertinent here, the Second Circuit recently applied the concreteness requirement to a pleading alleging technical violations of NYLL § 195, one of the provisions under which plaintiff brings the instant action. *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300 (2d Cir. 2024). In *Guthrie*, the district court had determined that the plaintiff lacked standing to recover statutory damages for his employer's alleged failure to provide proper wage notices and proper wage statements under § 195, because the plaintiff had failed to allege a concrete harm. *Id.* at 302–03. Recognizing that *TransUnion* requires pleading more than mere statutory violations to establish standing, the panel affirmed, holding that "a plaintiff cannot rely on 'technical violations' of [NYLL] but must allege 'actual injuries suffered as a result of the alleged wage notice and wage statement violations.'" *Id.* at 305 (quoting *Guthrie v. Rainbow Fencing Inc.*, 2023 WL 2206568, at *6 (E.D.N.Y. Feb. 24, 2023)).

Here, both parties acknowledge *Guthrie*, but they disagree about how it applies. Defendant argues that "the alleged technical violations of wage notice and wage statement requirements did not cause a tangible injury to [p]laintiff." Def. Mem. at 19. But plaintiff maintains that, unlike in *Guthrie*, his complaint adequately connects defendant's alleged conduct to the concrete harms he experienced, including by asserting that the claimed violations "'depriv[ed] him of the ability to know exactly how much compensation he was entitled to receive and when he was entitled to receive it, which contributed to the underpayment of wages at issue in this case.'" Pl. Opp. at 20 (quoting Compl. ¶¶ 43–44).

In *Guthrie*, the panel emphasized that plaintiffs seeking to recover for technical violations of the NYLL must allege specifically not just that those violations caused them injuries, but also how. 113 F.4th at 309 ("[T]he plaintiff-employee must support a plausible 'theory as to *how* he was injured by [the] defendants' failure to provide the required documents.'" (emphasis in

original)) (quoting *Quieju v. La Jugueria Inc.*, 2023 WL 3073518, *2 (E.D.N.Y. Apr. 25, 2025)).

The deficient pleading in *Guthrie* had alleged only that:

> "At all times relevant herein, neither Defendant provided Plaintiff with the notice(s) required by NYLL 195(1)."
>
> "At all times relevant herein, neither Defendant provided Plaintiff with the statement(s) required by NYLL 195(3)."
>
> "At all times relevant herein, Defendants . . . failed and willfully failed to provide Plaintiff with the notice(s) required by 195(1)—Plaintiff is therefore entitled to and seeks to recover in this action the maximum recovery for this violation . . . ."
>
> "At all times relevant herein, Defendants . . . failed and willfully failed to provide Plaintiff with the statement(s) required by NYLL 195(3)—Plaintiff is therefore entitled to and seeks to recover in this action the maximum recovery for this violation . . . ."

*Id.* at 310 (citations omitted). These boilerplate allegations were insufficient to plausibly allege an Article III injury. As the panel explained, the complaint's fatal flaw was that it "failed to identify a concrete downstream harm [that the plaintiff] suffered as a result of the statutory violation." *Id.* at 311.

Yet the same is not true here. The complaint in this case alleges the following:

> On each occasion when [d]efendant paid [plaintiff], [d]efendant failed to furnish [plaintiff] with a proper wage statement that accurately listed, *inter alia*, the dates of work covered by that payment of wages, his actual hours worked, his overtime rate, and his overtime wages owed. *Defendant's failure to provide [plaintiff] with a proper wage statement deprived [plaintiff] of the ability to know exactly how much compensation he was entitled to and contributed to the underpayment of wages as asserted herein.*
>
> Additionally, at the time of his hire, [d]efendant failed to provide [plaintiff] with any wage notice, let alone a notice that accurately listed, *inter alia*: [plaintiff's] regular and overtime rates of pay and basis thereof; whether [plaintiff] would be paid by the hour, salary, or in another manner; any allowances claimed; the regular payday designated by [d]efendant; the name of [d]efendant; any 'doing business as' names used by [d]efendant; the physical address of [d]efendant's main office or principal place of business, and a mailing address if different; and [d]efendant's telephone number.

> *Defendant's failure to provide [p]laintiff with a proper wage notice deprived [p]laintiff of the ability to know exactly how much compensation he was entitled to and against whom to bring his claims, and contributed to the underpayment of wages as asserted herein.*

Compl. ¶¶ 43–44 (emphases added).

This case differs from *Guthrie* in one essential way. Unlike the plaintiff there, who had asserted only that the defendant had failed to provide the required documents, *see* 113 F.4th at 310, plaintiff here has "identif[ied] a concrete downstream harm he suffered as a result of the statutory violation[s]": the alleged underpayments, or the lost time-value of money, *see* Compl. ¶¶ 41, 43–44. In this respect, plaintiff's complaint is more like those that the *Guthrie* panel cited approvingly than the insufficient pleading in that case. *See* 113 F.4th at 308–09 n.4.[2] As the panel stated, "a plaintiff-employee who has plausibly shown that defective notices led him . . . to lose wages has [] a concrete interest and is not simply policing legal infractions in the abstract." *Id.* at 310. Plaintiff has done so in this case.

Indeed, "[f]ollowing *Guthrie*, district courts are in agreement that a plaintiff has standing if he plausibly alleges that, by failing to provide the required wage statements, the employer was 'able to hide [its] violations of wage and hour laws' and thus prevent the employee from 'determining and seeking payment for the precise amount of [his] unpaid wages.'" *Freeland v. Findlay's Tall Timbers Dist. Ctr., LLC*, 2024 WL 4652251, *2 (W.D.N.Y. Nov. 1, 2024) (quoting

---

[2] For comparison's sake, the panel listed *Kaur v. Natasha Accessories Ltd.*, 2024 WL 3429129, at *4 (S.D.N.Y. July 16, 2024) (highlighting pleading's connection between alleged wage statement violations and employee's being "prevented [] from determining and seeking payment for the precise amount of her unpaid wages"); *Santamaria v. Vee Techs., Inc.*, 2024 WL 1216579, at *8 (S.D.N.Y. Mar. 21, 2024) (same, between alleged wage notice violations and employee's lack of awareness of when she was supposed to earn overtime pay and subsequent underpayment); and *Metcalf v. TransPerfect Translations Int'l, Inc.*, 2023 WL 2674743, at *6 (S.D.N.Y. Mar. 29, 2023) (same, between alleged wage notice violations and employees' inability to calculate employer's back payments).

*Castillo v. Hollis Delicatessen Corp.*, 2024 WL 4107258, *1 n.1 (E.D.N.Y. Sept. 6, 2024)) (collecting cases). That is the thrust of plaintiff's claims. *See* Compl. ¶¶ 43–44.

At this stage, the complaint contains sufficient factual allegations to overcome the hurdles that *Spokeo*, *TransUnion*, and *Guthrie* impose.³ Since plaintiff has alleged sufficient facts to make out concrete injuries, he has standing to assert Counts Two and Three, and defendant's motion to dismiss under Rule 12(b)(1) must be denied.

### B.     Rule 12(b)(6) and a Private Right of Action to Bring Count One

In moving to dismiss Count One for failure to state a claim, defendant contends that NYLL § 191 provides no private right of action for frequency-of-payment claims. Def. Mem. at 11. Defendant does not argue that the statutory text precludes private suits, but instead points to the statutory history and purpose, urging the Court to adopt the Second Department's reasoning in *Grant*, 223 A.D.3d at 712.

Plaintiff responds that the Court should follow the "overwhelming majority" of its sister courts, Pl. Opp. at 8, which have been "nearly unanimous" in adopting the First Department's contrary conclusion in *Vega v. CM & Associates Construction Management, LLC*, 175 A.D.3d 1144 (1st Dept. 2019), which found that § 191 provides a private right of action, *id.* at 13.

Broadly speaking, where federal courts have jurisdiction due to diversity of citizenship, they apply state law as enacted by state legislatures and interpreted by state courts of last resort. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). So, in applying New York law, "[federal

---

³ The Court acknowledges defendant's argument that the putative class members are not entitled to damages because plaintiff's allegations are "tie[d] . . . to [his] NYLL § 191 frequency of payment claim," which, defendant argues, plaintiff cannot bring as a private suit. Def. Mem. at 19. As detailed above, plaintiff's factual claims are sufficient at this stage. Otherwise, the Court addresses arguments concerning § 191 below.

courts] are bound . . . by the law of New York as interpreted by the New York Court of Appeals." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 739 F.3d 45, 48 (2d Cir. 2013).  And where state courts of last resort have not spoken, federal courts "look to [state intermediate appellate courts'] decisions unless 'convinced by other persuasive data that the highest court of the state would decide otherwise.'"  *Id.* (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940)).

Thus, the dilemma here: which of two intermediate appellate decisions more accurately predicts how the Court of Appeals would decide whether NYLL § 191 provides a private right of action?  Defendant says the Second Department's decision in *Grant*, *see* Def. Mem. at 16–18, while plaintiff says the First Department's decision in *Vega*, *see* Pl. Opp. at 13–15.  For the following reasons, the Court agrees with plaintiff and adopts the reasoning in *Vega*.

As an initial matter, *Grant* and *Vega* offer two sharply divergent paths.  In *Grant*, the Second Department affirmed the dismissal of a putative class action alleging that the defendant-employer had improperly paid its employees every other week, instead of weekly.  223 A.D.3d at 713.  As the NYLL's text did not directly address private suits, the court analyzed its structure and purpose.  *See id.* at 715.  It reasoned that, given language in § 198 about nonpayment and underpayment, and language elsewhere allowing liquidated damages as an "additional amount" of recovery, the Legislature's purpose in enacting the relevant sections was to address scenarios where "an employee has received a *lesser amount* of earnings than agreed upon, not [where] the employee received the agreed-upon amount *one week later*[.]"  *Id.* (emphases added).

In so holding, the Second Department explicitly rejected the First Department's decision in *Vega*, which had recognized a private right of action.  *Grant*, 223 A.D.3d at 715 ("[W]e do not agree that payment of full wages on the regular biweekly payday constitutes nonpayment or underpayment.").  Rather, the court held, while § 191 levies frequency-of-payment requirements,

plaintiffs can obtain liquidated damages for violations of those requirements only when their employers also deprive them of their full wages, not just the time-value of money, in part because biweekly payments can comport with private employment agreements. *Id.* at 716.

Turning now to *Vega*, the First Department took a different view of the NYLL's text and purpose in affirming the denial of a motion to dismiss a complaint alleging improper biweekly pay. 175 A.D.3d 1144, 1144 (1st Dep't 2019). That court observed that the purpose of § 198 was to "'enhanc[e] enforcement of [the NYLL's] substantive wage enforcement provisions,'" including timeliness-of-payment requirements. *Id.* at 1145 (quoting *Gottlieb v. Kenneth D. Laub & Co.*, 82 N.Y.2d 457, 463 (1993)). And since the NYLL did not define "underpayment," the First Department relied on the word's plain meaning to determine that "[t]he moment that an employer fails to pay wages in compliance with section 191(1)(a), the employer pays less than what is required," so private parties can seek liquidated damages under the statute. *Id.*

While the First Department concluded that §§ 191 and 198 together expressly authorized private suits for untimely payments, it also held that the NYLL could be read to impliedly provide for such actions. *Vega*, 175 A.D.3d. at 1146–47. It reasoned that an implied private right of action would likewise advance the legislative purpose, as the Legislature had enacted § 191 to benefit "manual worker[s]" like the plaintiff in that case, and comport with the legislative scheme, as § 198 explicitly authorized certain private actions where the state labor commissioner declined to pursue alleged violations. *Id.*

Now, confronted with this conflicting authority, the Court finds the First Department's decision in *Vega* more persuasive, declines to adopt the Second Department's reasoning in *Grant*, and predicts the Court of Appeals will do the same.

The Court is in good company in reaching this conclusion.  Denying a motion to dismiss that closely resembled the one under consideration here, Chief Judge Sannes has observed that "[d]istrict courts sitting in this Circuit have had the opportunity to weigh-in on *Grant* and address the split in authority," and "all but one have continued to follow *Vega* as the [predominant] authority and predict that the Court of Appeals is more likely to adopt the First Department's conclusion."  *Covington v. Childtime Childcare, Inc.*, 2024 WL 2923702, *4 (N.D.N.Y. June 10, 2024) (collecting cases); *see also Bazinett v. Pregis LLC*, 720 F. Supp. 3d 154, 165 (N.D.N.Y. 2024) (MAD) ("[B]ased on the reasoning set forth by the vast majority of [c]ourts to continue to follow *Vega*, . . . the Court concludes that the *Grant* majority and the few district court cases questioning *Vega* are not persuasive enough evidence to reject the present coalition of cases upholding *Vega*.").

After Chief Judge Sannes's writing in *Covington*, the Southern District of New York similarly concluded, for the sixth consecutive time since *Grant*, that a private right of action is available for timeliness-of-payment violations.  *Espinal v. Sephora USA, Inc.*, 2024 WL 4241537, *3, *6–*7 (S.D.N.Y. Sept. 19, 2024).  The court reasoned that, since § 198(1-a) allows employees to bring "wage claims" for "underpayment[s]" that violate NYLL article 6, which encompasses the frequency-of-payment provisions, if such claims are "underpayment[s]," then the statute provides a private right of action.  *Id.* at *4.  It then assessed the NYLL against the backdrop of the federal Fair Labor Standards Act ("FLSA"), which allows private suits for untimely payments.  *Id.* at *5–*6 (noting the Second Circuit has instructed courts to read NYLL and FLSA liquidated damages provisions in concert) (citing *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018)).  Finally, the court determined that the NYLL's purposes, including ensuring that manual workers timely receive their wages, support this construction, too.  *Id.* at *6.

Against this backdrop of carefully reasoned—and numerous—decisions predicting that the Court of Appeals will favor *Vega* over *Grant*, the Court "is persuaded by the reasoning of, and the conclusion reached by, the majority of its sister courts and sees no reason to depart from such rulings." *Covington*, 2024 WL 2923702, at *5.

Accordingly, defendant's motion to dismiss Count One must be denied.

C.     **Defendant's Request for a Stay**

As an alternative to dismissal, defendant has asked the Court to stay these proceedings, pending a Court of Appeals decision regarding the availability of a private right of action for untimely wage payments. Def. Mem. at 20–22. Plaintiff counters that a stay is unwarranted, in part because it is unclear that the Court of Appeals will soon, if ever, act to resolve the split between *Vega* and *Grant*. *See* Pl. Opp. at 18–19.

As outlined above, district courts' power to stay proceedings is discretionary. *See, e.g.*, *Miller*, 2019 WL 1470249, at *1. Guided by the *Kappel* test, and aware of the possible remoteness of any decision finally resolving the split in authority, the Court declines to exercise that discretion here.

Defendant argues that all five factors support its request for a stay. *See* Def. Mem. at 20–21; *Kappel*, 914 F. Supp. at 1058. But the Court is not convinced.

Regarding the first factor, prejudice to the plaintiffs, courts have issued mixed decisions in cases resembling this one. *See Sylvester v. S. Cross, LLC*, 2024 WL 4728598, *2 (E.D.N.Y. Nov. 9, 2024) (finding no prejudice where plaintiff was to be delayed only in receiving liquidated damages, not back wages); *Urena v. Sonder USA Inc.*, 2024 WL 1333012, *2 (S.D.N.Y. March 28, 2024) (same); *Pry v. Auto-Chlor Sys. LLC*, 2024 WL 3728981, *2 (S.D.N.Y. Aug. 8, 2024)

(same); *but see Rankine v. Levi Strauss & Co.*, 674 F. Supp. 3d 57, 69 (S.D.N.Y. 2023) (concluding first *Kappel* factor slightly favored plaintiff, even absent allegations of unpaid wages, because of plaintiff's general "interest in an expeditious resolution to his litigation") (citing *Poppel v. Rockefeller Univ. Hosp.*, 2019 WL 3334476, *2 (S.D.N.Y. July 25, 2019) & *Readick v. Avis Budget Grp., Inc.*, 2014 WL 1583799 (S.D.N.Y. Apr. 28, 2014) (both recognizing same)). Referring to pending action from the Second Department in *Grant*, one court specifically noted that "it is not clear when a decision will be issued, creating the possibility of prejudice if the delay is extensive." *Davis v. Banana Republic, LLC*, 2023 WL 5979207, *2 (E.D.N.Y. Aug. 25, 2023). The same is now true of the Court of Appeals.

The remaining factors also point in different directions. The second, emphasizing defendants' interests, seems to favor defendant, which has repeatedly argued for a stay. *See* Def. Mem. at 20; Dkt. No. 17 at 14; *but see Rankine*, 674 F. Supp. 3d at 69 (holding any prejudice to defendant in denying stay would be minimal, and not outweigh prejudice to plaintiff, in a "relatively simple" case brought under the NYLL). The final three factors, weighing the courts', non-parties' and the public's interests, respectively, could all support granting a stay in the name of judicial economy. *See, e.g.*, *Pry*, 2024 WL 3728981, at *2 ("[If the Court of Appeals issues an outcome-determinative ruling in *Grant*], staying the case would also preserve judicial resources, which serves the interests of the courts and the public."). But judicial economy could also support denial, depending on the circumstances.

Here, for the Court's, other interested parties', and the public's sake, the lack of any clear idea of when this litigation may resolve after a stay counsels against granting one. By way of illustration, compare this case to *Loftus v. Signpost Inc.*, 464 F. Supp. 524 (S.D.N.Y. 2020), which defendant cites in support of its request for a stay, Def. Mem. at 20. There, in granting a

stay, the Southern District could point to a specific date by which it expected the Supreme Court to resolve a related question: the end of its term (in the very next month), following oral argument in the case (which had occurred just weeks earlier). 464 F. Supp. at 527. This Court, however, confronts a much longer and more uncertain time horizon.

Further, in *Urena*, also cited by defendant, Def. Mem. at 21, the court noted that "[a] stay is especially warranted . . . where 'a higher court is *close* to settling an important issue of law bearing on the action,'" 2024 WL 1333012, at *2 (quoting *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 622 (S.D.N.Y. 2022)) (emphasis added). At the time of that court's writing, in March 2024, the Second Department had been weighing a fully briefed and unopposed motion for leave to appeal *Grant* for about one month. *See id.* But, since then, nearly a year and a half has passed, and the Court of Appeals has yet to resolve the split.[4] *See generally Grant v. Glob. Aircraft Dispatch, Inc.*, No. 2021-03202 (2d Dep't), Dkt.

At this time, nothing suggests the Court of Appeals is close to issuing a decision that would aid in resolving defendant's motion. To the contrary, as the Southern District observed in a similar case, writing even after *Urena*, "any decision by the Court of Appeals is far off, and it's not even certain that there will be one." *Bryant v. Buffalo Exch., Inc.*, 2024 WL 3675948, *6 (S.D.N.Y. Aug. 6, 2024) (denying request for stay that could have "delay[ed] litigation for a decision that may never come").

In the meantime, the Court is reluctant to leave the parties to twist in the wind, and defendant's request for a stay is denied.

---

[4] As of the docketing of this order, the Court of Appeals has not decided, scheduled arguments regarding, or otherwise indicated that it was in any manner "close to settling" this central question.

### D. Recent Amendment to NYLL

Lastly, the Court acknowledges that the Legislature amended the NYLL earlier this year, including a provision related to liquidated damages' availability as a remedy for untimely wage payments in some scenarios. *See* § 198(1-a) (2025) ("Notwithstanding the provisions of this subdivision, liquidated damages shall not be applicable to violations of paragraph a of subdivision one of section one hundred ninety-one of this article where the employer paid the employee wages on a regular payday, no less frequently than semi-monthly.").

Concerning retroactive application, the amendment was enacted on May 9, 2025, and by its own terms it "[took] effect immediately and [applies] to causes of action pending . . . on . . . such date." Act approved May 9, 2025, NY LEGIS 56, 2025 Sess. L. News of N.Y. Ch. 56 (S. 3006-C). Of course, any changes to the text may influence how the parties wish to proceed.

In its reply brief, defendant argued that the Legislature "[was] considering legislation that rejects *Vega*." Dkt. No. 17 at 9 (capitalization omitted). Defendant pointed to two proposals, then under consideration by separate legislative committees, which would have precluded private actions against "unknowing[]" timeliness-of-payment violations and limited liquidated damages' availability, respectively. *Id.* at 9–10. Indeed, the latter, Senate Bill S2081, contained language closely resembling many of the enacted changes, and, as defendant highlights, *id.* at 10–11, Senate Bill S2081's legislative justification explicitly cited countering *Vega*, *see* Bill Status, S. B. S2081 (N.Y. 2025), https://www.nysenate.gov/legislation/bills/2025/S2081. No matter how clear that proposal's purpose, though, the Legislature did not ultimately adopt it.[5] *Id.*

---

[5] And, in any case, the Court remains persuaded that the Court of Appeals will more likely follow *Vega* than *Grant*.

Thus, because the parties did not have occasion to address the new language in their submissions, and as these developments do not appear to deprive the Court of its jurisdiction over this matter,[6] this order does not decide any questions about the amendment's potential effects on this litigation. However, the Court invites the parties to submit further briefing on this narrow issue, if they wish to do so, within twenty-eight days of entry of this order.

## V.   CONCLUSION

Since the Court finds that the Court of Appeals will likely permit private suits for alleged violations of NYLL § 191, and plaintiff has plausibly alleged concrete injuries stemming from inadequate wage statements and notices, plaintiff has adequately stated claims under NYLL's wage-notice, wage-statement, and timeliness-of-payment provisions. Therefore, defendant's motion to dismiss the complaint for want of standing or failure to state a claim must be denied.

Further, because plaintiff, the court, non-parties, and the public may incur prejudice from any further delay in awaiting a Court of Appeals decision, the Court declines to issue a stay.

Therefore, it is

ORDERED that defendant's motion to dismiss (Dkt. No. 6) is DENIED; and

---

[6] On the one hand, because liquidated damages now plainly appear to be available to private plaintiffs in at least some scenarios, one magistrate judge in our circuit has concluded that, "[a]s amended, NYLL § 198(a-1) now explicitly states that it provides a private cause of action for violations of [§] 191(a)." *Garcia v. New Force Constr. Corp.*, 2025 WL 2015158, at *15 (E.D.N.Y. July 18, 2025) (Report & Recommendation); *see also Lopez v. J&L Sky Contractors Corp.*, 2025 WL 1859690, at *17 (E.D.N.Y. July 7, 2025) (Report & Recommendation) (same). On the other, depending on the allegations, limiting recovery to "no more than one hundred percent of the lost interest found to be due for the delayed payment of wages," § 198(1-a), could well influence damages calculations and amount-in-controversy analyses. But without the benefit of further argument from the parties, the Court is reluctant to conclude that these developments fatally wound what is, in all other respects, an adequately pleaded complaint.

ORDERED that, should the parties wish to submit supplemental briefing concerning only the 2025 amendment to the NYLL, all such submissions must be submitted within twenty-eight days of the entry of this order.

The Clerk of the Court is directed to terminate the pending motion and set answer and briefing deadlines.

**IT IS SO ORDERED.**

Dated: September 25, 2025
Utica, New York.

Anthony J. Brindisi
U.S. District Judge